UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINA M. THOMAS,

               Plaintiff,

v.                                           7:14-CV-1364
                                                 (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

APPEARANCES:                                OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP    LAWRENCE HASSELER, ESQ.
  Counsel for Plaintiff
307 State St.
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 13.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Christina M. Thomas ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10,11.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on March 16, 1965. (T. 221.) She completed two years of college. (T. 263.) Generally, Plaintiff's alleged disability consists of lower back impairment, diabetes, and macular degeneration of the eye. (T. 262.) Her alleged disability onset date is July 27, 2009. (T. 258.) Her date last insured is June 30, 2016. (T. 13.)[1] She previously worked as a developmental aide and a store manager. (T. 263.)

   B.   **Procedural History**

On August 16, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 258.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 7, 2013, Plaintiff appeared before the ALJ, Edward I. Pitts. (T. 34-89.) A supplemental hearing was held on June 10, 2013. (T. 90-126.) On July 31, 2013, ALJ Pitts issued a written decision finding Plaintiff not disabled under the Social Security Act. (T.8-25.) On October 10, 2014, the Appeals Council ("AC") denied

---

[1] Plaintiff's application and Disability Report list her date last insured as September 30, 2011. (T. 258, 293.) A letter from Plaintiff's counsel also indicated Plaintiff's date last insured as September 30, 2011. (T. 325.) Plaintiff's brief listed her date last insured as September 30, 2011 as well. (Dkt. No. 10 at 1 [Pl.'s Mem. of Law].) However, the ALJ determined Plaintiff's date last insured is June 30, 2016. (T. 13.) At the initial hearing Plaintiff's counsel informed the ALJ that she talked to Plaintiff regarding her date last insured "issue." (T. 39.) The ALJ indicated he would follow up on the date last insured, but the ALJ did not do so. Neither party disputes the June 30, 2016 date.

2

Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful activity since July 27, 2009. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of macular degeneration, degenerative disc disease of the lumbar spine, and obesity. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (*Id.*)[2] The ALJ determined Plaintiff could frequently climb stairs, could balance, but could never climb ladders. (*Id.*) The RFC determination stated Plaintiff would need to avoid workplace hazards such as unprotected height, moving machinery, and operation of motor vehicle due to her vision. (*Id.*)[3] The RFC limited Plaintiff to occasional stooping, crouching, and crawling; and frequent kneeling. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 18-20.)

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[3] Of note, the RFC also stated Plaintiff could not drive at night.

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to follow the treating physician rule. (Dkt. No. 10 at 15-20 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility. (*Id.* at 20-22.) Third, Plaintiff argues the ALJ failed to properly assess Plaintiff's RFC. (*Id.* at 22-24.) Fourth, and lastly, Plaintiff argues the ALJ's step five conclusion was not supported by substantial evidence. (*Id.* at 24-25.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly assessed Plaintiff's RFC. (Dkt. No. 11 at 11-15 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 15-17.) Third, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 17-20.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

### IV. ANALYSIS

#### A. Whether the ALJ Properly Assessed the Medical Opinion Evidence in the Record

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 at 11-15 [Def.'s Mem. of Law].) The Court adds the following analysis.

The medical record contains numerous medical source statements from Plaintiff's treating physicians and from the non-examining State agency medical consultant. The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (*quoting Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

i.) Paul F. Torrisi, M.D.

Plaintiff received eye care from Dr. Torrisi, an ophthalmologist. In January of 2010, Dr. Torrisi completed a medical source statement. (T. 620-625.) Therein, Dr. Torrisi listed Plaintiff's diagnosis as macular degeneration of the left eye and bilateral

7

choroiditis. (T. 620.) Dr. Torrisi provided the following exertional limitations. He observed that Plaintiff could lift and carry up to 25 pounds occasionally and frequently. (*Id.*) He opined that Plaintiff was not limited in her ability to stand, sit, or walk. (T. 621-622.) Regarding postural limitations, Dr. Torrisi stated Plaintiff should never crawl or stoop and Plaintiff could occasionally balance, kneel, and crouch. (T. 622.) Dr. Torrisi observed that Plaintiff's ability to see was "limited;" however, Dr. Torrisi did not elaborate on this limitation. (T. 623.) At the conclusion of the first hearing the ALJ indicated he wanted more specific information from Dr. Torrisi regarding Plaintiff's visual limitations. (T. 85-86.) During the supplemental hearing Plaintiff's counsel indicated that she requested additional information from Dr. Torrisi; however, "he wouldn't elaborate it anymore." (T. 93-94.) The ALJ afforded the medical opinion of Dr. Torrisi "significant weight." (T. 16.) However, the ALJ concluded Plaintiff had greater exertional limitations than those imposed by Dr. Torrisi. (*Id.*)

    ii.)    Anne Calkins, M.D.

Plaintiff received pain management from Dr. Calkins in connection with her Worker's Compensation claim. On December 22, 2011 Dr. Calkins completed a medical source statement. (T. 627-632.) Dr. Calkins provided Plaintiff with the following exertional limitations. Plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently. (T. 628.) Plaintiff could sit "at least [two] hours in an eight hour workday." (*Id.*) Plaintiff must "periodically alternate sitting and standing to relieve pain or discomfort." (T. 629.)[4] Plaintiff's ability to push and pull with the lower

---

[4] The term "periodically" is not defined. SSR 96-9p states: "[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in

8

and upper extremities was limited. (*Id.*) Dr. Calkins opined Plaintiff could never climb, kneel, crouch, crawl, or stoop. (*Id.*) Dr. Calkins stated Plaintiff could occasionally balance. (*Id.*) Dr. Calkins observed that Plaintiff could occasionally reach in all directions. (T. 632.) The ALJ afforded "some weight" to Dr. Calkins's opinion regarding Plaintiff's exertional limitations. (T. 17.) The ALJ afforded "limited weight" to Dr. Calkins's opinions regarding Plaintiff's postural limitations, manipulative limitations, and Plaintiff's need for a sit/stand option. (*Id.*)

    iii.)    Carri A. Jones, M.D.

Plaintiff received care from Dr. Jones in connection with her Worker's Compensation claim. On September 8, 2011, Dr. Jones opined that due to Plaintiff's worsening symptoms, she had a "partial moderate to marked disability." (T. 411.) Dr. Jones opined Plaintiff should avoid lifting eight pounds or more, and should avoid "repetitive bending and push[ing]/pull[ing]." (T. 411.) The ALJ affording Dr. Jones's September opinion "limited weight." (T. 17.) Dr. Jones opined in February of 2011, Plaintiff should avoid lifting twenty pounds or more and should avoid repetitive bending. (T. 414.) The ALJ afforded the February 2011 opinion "some weight." (T. 17.)

    iv.)    Arvind Chopra, M.D.

Dr. Chopra, a non-examining State agency medical examiner, reviewed Plaintiff's medical record on May 10, 2012. Dr. Chopra adopted the physical RFC assessment completed by a single decision maker September 2011. (T. 493-500.) The single decision maker's opinion, adopted by Dr. Chopra, limited Plaintiff to sedentary work. (T. 495.) In terms of postural limitations, Plaintiff was limited to occasional stooping,

---

the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand."

crouching, and crawling. (T. 496.) The ALJ afforded Dr. Chopra's opinion "significant weight." (T. 16.)

Plaintiff first argues the ALJ erred in providing the entirety of Dr. Torrisi's opinion "significant weight" because Dr. Torrisi specialty was in ophthalmology and therefore he was not equipped to opine on Plaintiff's exertional limitations. (Dkt. No. 10 at 15 [Pl.'s Mem. of Law].) Although the ALJ stated he afforded Dr. Torrisi's opinion "significant weight," the ALJ clarified that the record supported greater exertional limitations than imposed by Dr. Torrisi's. (T. 16.) Therefore, the ALJ did precisely what Plaintiff requests in her brief; the ALJ afforded the exertional limitations prescribed by Dr. Torrisi lesser weight than the visual limitations. Plaintiff argues that the ALJ's recognition of greater exertional limitations "begs the question – how significant weight could be given to the entirety of Dr. Torrisi's statement." (Dkt. No. 10 at 15 [Pl.'s Mem. of Law].) To be sure, the ALJ could have phrased how he weighed each portion of Dr. Torrisi's opinion with more clarity; however, the ALJ's analysis, and subsequent RFC determination, made clear that the ALJ's afforded "significant weight" to Dr. Torrisi's statement, the ALJ's analysis of Dr. Torrisi's opinion indicated he afforded lesser weight to the doctor's opinion regarding Plaintiff's exertional limitations.

Plaintiff next argues the ALJ should have provided Dr. Calkins's opinion controlling weight. (Dkt. No. 10 at 16 [Pl.'s Mem. of Law].) The majority of Dr. Calkins's medical source opinion supports the ALJ's RFC determination that Plaintiff can perform sedentary work.[5] The ALJ did not adopt Dr. Calkins's non-exertional and postural limitation in his RFC determination, reasoning her conclusions were not supported by

---

[5] Dr. Calkins's exertional limitations conform with the Regulation's exertional limitations for sedentary work. *See* 20 C.F.R. § 404.1667(a).

objective medical evidence or her treatment notes. (T. 17.) First, substantial evidence supported the ALJ's determination regarding Dr. Calkins's opinion. Second, even if the ALJ did err in his weight determination such error was harmless because at the hearing the vocational expert testified that there were a significant number of jobs in the national economy Plaintiff could perform given Dr. Calkins's limitations. *See Johnson*, 817 F.2d at 986 (applying harmless error standard to social security cases, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration").

The ALJ reasoned that Dr. Calkins's sit/stand option, postural limitations and manipulative limitations were not consistent with her treatment notes and contradicted by the objective medical evidence in the record. (T. 17.) The ALJ's decision provided a thorough analysis and specific reasoning for affording "limited" weight to Dr. Calkins's opinion. (T. 16-17.) For example, during the two times Dr. Calkins treated Plaintiff, treatment notes indicated Plaintiff received relief from her medication and facet injections. (T. 526.) Dr. Calkins noted Plaintiff had limited flexion and extension; however, Plaintiff had full motor tone and strength in her lower extremities. (T. 527.) Further, the record indicated Plaintiff was able to drive two and a half to three hours to her appointments, stopping only once for a rest, which indicated Plaintiff could at least sit for an hour before needing to change position. (T. 71, 528, 428.) However, any error the ALJ may have made in affording weight to Dr. Calkins's opinion was harmless.

At the hearing Plaintiff's counsel posed a hypothetical to the vocational expert which included all of Dr. Calkins's exertional, non-exertional, postural, and manipulative

limitations, as well as, the need for a sit/stand option. (T. 113-116.)[6] The vocational expert testified that given those limitations Plaintiff could perform work as a telephone solicitor (DOT 299.357-014) and a call-out operator (DOT 237.367-014). (T. 114.)[7] Therefore, any error the ALJ may have committed in the weight he afforded Dr. Calkins's opinion was harmless. Even if the ALJ had afforded Dr. Calkins's opinion controlling weight, as Plaintiff requests, Plaintiff would still be found not disabled at step five because the vocational expert testified that there were a significant number of jobs in the national economy Plaintiff could perform given all of Dr. Calkins's prescribed limitations.

The Plaintiff further argues the ALJ erred in providing "significant weight" to the opinion of Dr. Chopra because he simply reaffirmed the opinion of a single decision maker ("SDM"). (Dkt. No. 10 at 19 [Pl.'s Mem. of Law].) To be sure, SDMs are "non-physician disability examiners who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Hart v. Astrue,* 32 F.Supp.3d 227, 237 (N.D.N.Y.2012). Here, Dr. Chopra reviewed the medical evidence in file and concluded that the physical RFC assessment completed by the SDM was proper. (T. 493.) Thus, Dr. Chopra's opinion was essentially the opinion of the SDM. However, Dr. Chopra was an acceptable medical source under 20 C.F.R. § 404.1513(a), and therefore his opinion, although originally formulated by a non-acceptable source, became a medical opinion once he adopted it.

---

[6] The sit/stand limitation imposed by Dr. Calkins did not specify a duration requirement. (T. 629.) The vocational expert testified that the occupations he provided would allow for sit/stand option every thirty minutes. (T. 115.) When asked if the occupations would still be present if Plaintiff needed to sit/stand every 15 minutes or less, the vocational expert testified "it would be difficult for an employer to accommodate" that requirement; however, it was not established if the occupations would not exist. (*Id.*)

[7] The occupation of telephone solicitor consists of 258,000 jobs nationally and the occupation of call-out operator consists of 9,240 jobs nationally. (T. 110, 114.)

12

Plaintiff's argument circles back to her main argument that the ALJ failed to apply the treating physician rule to Dr. Calkins's opinion. As stated herein, even if the ALJ had afforded Dr. Calkins's opinion controlling weight, a determination of not disabled would still follow. In addition, an ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010). Second, the ALJ did not rely solely on Dr. Chopra's medical source statement in formulating his RFC determination. The ALJ also relied on other medical evidence in the record, namely, the medical source statement provided by Dr. Torrisi and to a lesser degree the opinions of Dr. Calkins and Dr. Jones. Therefore, the ALJ did not err in the weight afforded to Dr. Chopra's opinion, and even if the ALJ had erred in the weight he afforded the opinion, the error was harmless because a finding of not disabled at step five was still supported by vocational expert testimony.

Plaintiff also argues that the ALJ's RFC determination was not proper because it was contrary to law, not supported by substantial evidence and neglected to properly represent Plaintiff's limitations. (Dkt. No. 10 at 22-24 [Pl.'s Mem. of Law].) As stated herein, the ALJ properly weighed the opinion evidence in the record. Further, as stated in Part IV.B., the ALJ properly assessed Plaintiff's credibility. Therefore, the ALJ's RFC determination was supported by substantial evidence and remand is not recommended.

### B. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 at 15-17 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*citing Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Plaintiff argues the ALJ erred in his analysis of Plaintiff's credibility; specifically, in his treatment of Plaintiff's medical management, treatment notes that indicated Plaintiff's eye condition was "stable," and Plaintiff's activities of daily living. (Dkt. No. 10 at 21 [Pl.'s Mem. of Law].) Here, the ALJ considered Plaintiff's allegations and testimony and determined that Plaintiff's subjective complaints were partially credible. (T. 18.) Specifically, the ALJ found objective medical evidence, treatment, work activities, and activities of daily living did not support the degree of Plaintiff's complaints regarding her physical symptoms. (*Id.*) The ALJ expressed that his RFC determination accounted for Plaintiff's subjective complaints regarding her visual limitations. (*Id.*)

The RFC determination accounted for the visual limitations Plaintiff specifically testified to at the hearings. The only medical evidence indicating Plaintiff's visual impairment came from Dr. Torrisi, who indicated that Plaintiff's vision was "limited." (T. 623) Despite holding the record open for a more specific statement from Dr. Torrisi regarding what Plaintiff can and cannot do despite her vision impairment, Dr. Torrisi failed to provide additional limitation. Therefore, the ALJ relied on Plaintiff's own subjective complaints. Plaintiff testified that she had difficulties with reading and depth perception. (T. 53-54.) Plaintiff testified she was able to read newspapers and magazines, but novels were more difficult. (T. 55.) She testified that she uses a

15

computer tablet for two hours a day. (T. 68.) The RFC limited Plaintiff to "occasional reading." (T. 15.) Plaintiff also testified that she has difficulty driving at night. (T. 70-71.) The RFC stated Plaintiff could not work at unprotected heights, with moving machinery, or operate a vehicle. (T. 15.) Therefore, the ALJ's RFC determination accounts for the visual limitations Plaintiff testified she had. The medical record and Plaintiff's testimony fail to provide greater limitations than those imposed by the RFC.

Regarding Plaintiff's physical limitations, the ALJ's credibility analysis was proper because he discussed the objective medical evidence in the record as well as Plaintiff's medical treatment, Plaintiff's work history, and Plaintiff's activities of daily living. The medical opinion evidence in this case supported the conclusion that Plaintiff could perform sedentary work. The medical source opinions of Dr. Torrisi, Dr. Calkins, Dr. Chopra, and Dr. Jones all indicate Plaintiff was capable of some degree of sedentary work. (T. 411, 493-500, 620-626, 627-632.) Plaintiff's testimony, essentially that she was not able to engage in any work activity due to her impairments, was not supported by these medical opinions. Further, the ALJ properly examined the factors outline in the 20 C.F.R. § 404.1529(c)(3)(i)-(vii) when making a credibility determination. Therefore, the ALJ did not err in his credibility determination and remand is not recommended.

### C. Whether the ALJ's Step Five Determination was Proper

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 at 17-20 [Def.'s Mem. of Law].) The Court adds the following analysis.

Because this Court found no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545,

1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). Further, as stated in Part IV.A., even if the ALJ had adopted Dr. Calkins's opinion in its entirety, the vocational expert testified that there were jobs in significant numbers in the national economy Plaintiff could perform.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 17, 2015

/s/ Bill Carter

William B. Mitchell Carter
U.S. Magistrate Judge